## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

| | | |
|---|---|---|
| **ERNESTA WARE,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **No. 07 C 3974** |
| | ) | |
| **LASALLE BANK CORPORATION,** | ) | |
| **et al.,** | ) | |
| | ) | |
| **Defendants.** | ) | |


## MEMORANDUM OPINION

SAMUEL DER-YEGHIAYAN, District Judge

This matter is before the court on Defendants' motion for summary judgment.

For the reasons stated below, we grant the motion for summary judgment in its

entirety.


## BACKGROUND

Plaintiff Ernesta Ware ("Ware"), alleges that she was hired to be a Business

Loan Officer (also known as a Business Banking Officer ("BBO")) for Defendant

LaSalle Bank Corporation ("LaSalle") in March 2003. Ware claims that from the

outset of her employment with LaSalle, she was subjected to different treatment on

the basis of her race by Defendant Tom Kress ("Kress"), Defendant Tom Daugherty ("Daugherty"), and Defendant Tom Carlson ("Carlson"), all of whom were Ware's supervisors. Specifically, Ware alleges that she was not given branch referrals for almost the first two years of her employment and even when she was finally provided with branch referrals, she only received less desirable locations. Ware alleges that her "race is Black," (Compl. Par. 5), and that other similarly-situated white employees were given more numerous and more favorable branch referrals which allowed those employees to earn bonuses and advance within bank. Ware also claims that she was paid a lower salary than other similarly-situated white employees. According to Ware, Carlson, who was Ware's supervisor for most of her employment at LaSalle, often made comments about people living on the south side of Chicago, which Ware interpreted to be racial in nature. Ware claims that Carlson refused to attend business meetings on the south side of Chicago with Ware and that Carlson would not support the business deals of Ware in the same manner that he supported deals made by other similarly-situated white employees. According to Ware, Carlson refused to make eye contact with Ware and often took other employees out to lunch while excluding Ware. Ware alleges that on July 15, 2005, LaSalle terminated Ware's employment. Ware alleges that race appeared to be a motivating factor contributing to the termination of her employment.

Ware brought the instant action under 42 U.S.C. § 1981 ("Section 1981"), arguing that Defendants violated Ware's constitutional rights by (1) terminating her employment based on race, (2) paying Ware a lower salary than her similarly-situated white co-workers, and (3) treating Ware differently than her similarly-situated white co-workers with respect to other conditions of Ware's employment. Defendants now move for summary judgment.

## LEGAL STANDARD

Summary judgment is appropriate when the record, viewed in the light most favorable to the non-moving party, reveals that there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). In seeking a grant of summary judgment, the moving party must identify "those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)(quoting Fed. R. Civ. P. 56(c)). This initial burden may be satisfied by presenting specific evidence on a particular issue or by pointing out "an absence of evidence to support the non-moving party's case." *Id.* at 325. Once the movant has met this burden, the non-moving party cannot simply rest on the allegations in

the pleadings, but, "by affidavits or as otherwise provided for in [Rule 56], must set forth specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e). A "genuine issue" in the context of a motion for summary judgment is not simply a "metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). Rather, a genuine issue of material fact exists when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *Insolia v. Philip Morris, Inc.*, 216 F.3d 596, 599 (7th Cir. 2000). The court must consider the record as a whole, in a light most favorable to the non-moving party, and draw all reasonable inferences that favor the non-moving party. *Anderson*, 477 U.S. at 255; *Bay v. Cassens Transp. Co.*, 212 F.3d 969, 972 (7th Cir. 2000).

## DISCUSSION

Defendants move for summary judgment on Ware's Section 1981 claims, arguing that Ware has failed to put forth sufficient evidence to raise a genuine issue of material fact. Under Section 1981, "all persons within the jurisdiction of the United States shall have the same right . . . to make and enforce contracts . . . and to the full and equal benefit of all laws and proceedings . . . as is enjoyed by white

4

citizens." 42 U.S.C. § 1981. To prove employment discrimination under Section

1981, a plaintiff may proceed under either a direct method or an indirect method of

proof. *Hague v. Thompson Distribution Co.*, 436 F.3d 816, 820 (7th Cir. 2006); *see*

*also Herron v. Daimler Chrysler Corp.*, 388 F.3d 293, 299 (7th Cir. 2004)(stating

that Section 1981 claims are analyzed "under the same rubric as Title VII claims").


I. Direct Method of Proof

Under the direct method of proof, a plaintiff must establish a discriminatory

motivation through direct or circumstantial evidence. *Rudin v. Lincoln Land Cmy.*

*Coll.*, 420 F.3d 712, 719 (7th Cir. 2005). Direct evidence of discrimination would

constitute "an admission by" the defendant that the adverse employment action was

taken "on the basis of" his membership in a protected class. *Raymond v. Ameritech*

*Corp.*, 442 F.3d 600, 610 (7th Cir. 2006). A plaintiff can also present circumstantial

evidence under the direct method of proof, but such evidence must be sufficient to

create "a triable issue of whether the adverse employment action of which [the

plaintiff] complains had a discriminatory motivation." *Rudin,* 420 F.3d at 721

(quoting *Wallace v. SMC Pneumatics, Inc.*, 103 F.3d 1394, 1397 (7th Cir. 1997)).

The Seventh Circuit has also indicated that one way that circumstantial evidence can

create a triable issue is if there is a "'convincing mosaic of discrimination against the

plaintiff.'" *Paz v. Wauconda Healthcare and Rehabilitation Centre, LLC*, 464 F.3d 659, 666 (7th Cir. 2006)(quoting *Walker v. Bd. of Regents of Univ. of Wis.*, 410 F.3d 387, 394 (7th Cir. 2005)).

In the instant action, Ware has failed to point to direct evidence of unlawful discrimination. In addition, Ware has also not pointed to circumstantial evidence to create a triable issue and has not shown a "convincing mosaic" of discrimination against her. *Id.* The circumstantial evidence of discrimination relied upon by Ware consists largely of testimony by Ware that Carlson engaged in certain behavior which led Ware to believe that Carlson did not like her. (SAF Par. 25). These perceived slights alleged by Ware included: (1) Carlson's alleged failure to make eye contact with Ware, (2) Carlson's failure to say "hello" to Ware, (3) Carlson's failure to invite Ware to social events, and (4) Carlson's failure to treat Ware to meals despite the fact that he often did so for other employees. (SAF Par 25, 28). However, Ware has not pointed to any actions by Carlson or any other employee of LaSalle indicating a racial animus against Ware or an intent to discriminate against Ware on the basis of her race. Ware did testify that Carlson made negative comments about certain neighborhoods on the south side of Chicago being "rough" or "the wrong neighborhood." (SAF Par. 32). However, despite the fact that Ware interpreted these statements to be racial in nature, such statements do not, by

themselves, create a triable issue of racial discrimination. *See Paz*, 464 F.3d at 666.

Based on the lack of direct evidence of racial discrimination and the limited

circumstantial evidence of discrimination presented by Ware, there is not a

"convincing mosaic" of discrimination and Ware cannot proceed on her Section 1981

claims under the direct method.


## II.  Indirect Method of Proof

Ware argues that she can proceed under the indirect method of proof and that

she has raised genuine issues of material fact as to whether Defendants discriminated

against her.  Under the indirect method of proof a plaintiff must first establish a

prima facie case of discrimination.  *Scaife,* 446 F.3d at 739.  Once a plaintiff has

established a prima facie case of discrimination, the burden shifts to the defendant to

provide a legitimate non-discriminatory reason for the adverse action.  *Id.* at 739.  If

the defendant provides such a reason, the burden shifts back to the plaintiff to show

that the defendant's reason was a pretext for unlawful discrimination.  *Id.* at 739-40.


### A. Prima Facie Case

Defendants argue that Ware cannot establish a prima facie case of

discrimination with respect to any of her Section 1981 claims.  While Ware's

complaint contains only one count, she alleges that three distinct actions by
Defendants violated her constitutional rights and entitle her to relief under Section
1981: (1) that Defendants terminated Ware's employment, (2) that Defendants paid
higher salaries to other similarly-situated employees, and (3) that Defendants "treated
[Ware] differently than her similarly situated White co-workers in the terms and
conditions of her employment." (Compl. Par. 15). Under the indirect method of
proof, a plaintiff can establish a prima facie case of discrimination by showing that:
"(1) [s]he is a member of a protected class; (2) [s]he was meeting h[er] employer's
legitimate expectations at the time of the alleged adverse action; (3) [s]he was
subjected to an adverse employment action; and (4) the employer treated similarly
situated employees not in the protected class more favorably." *Scaife*, 446 F.3d at
739-40. Defendants argue with respect to Ware's claims that are unrelated to her
termination that she cannot establish an adverse employment action. Defendants also
argue that, with respect to Ware's termination, Ware cannot establish that she was
meeting LaSalle's legitimate employment expectations and she has not pointed to
any similarly-situated employees who were treated more favorably.


1. Claims Unrelated To Ware's Termination

Ware's complaint alleges that Defendants violated Section 1981 by paying her

lower wages and treating her differently with respect to other conditions of her employment. At the summary judgment stage, Ware has offered no evidence that she was discriminated against with respect to her compensation. The only evidence Ware provides of disparate compensation consists of alleged discussions she had with other BBOs regarding salaries. (RSF Par. 51). Ware does not claim to know the exact amount of these BBOs' salaries or how those salaries differed from her own. Rather, she merely alleges that one of the employees claimed to make "six figures." (RSF Par. 51). Ware does not even provide evidence of her own salary amount, nor any salary history of the other employees to whom she refers. Even if there were evidence that other BBOs were making more money, Ware has not disputed the fact that employees in Ware's position were paid salaries based on prior experience and performance at LaSalle. (RSF Par. 51). Thus, based on the evidence in the record, no reasonable trier of fact could conclude that Ware was subjected to an adverse employment action with respect to her wages.

Ware has also not shown that she was subjected to any other adverse employment action at LaSalle outside of her termination. Ware testified to several instances of what she believed to be unequal treatment ranging from employees not offering to treat her to meals to a failure on the part of management to provide her with branch referrals. According to the Seventh Circuit, "[a]n adverse employment

action is one that is materially adverse." *Hilt-Dyson v. City of Chicago*, 282 F.3d 456, 465 (7th Cir. 2002). Furthermore, "'[a] materially adverse employment action is something more disruptive than a mere inconvenience or an alteration of job responsibilities.'" *Maher v. City of Chicago*, 2008 WL 4755786 at *6 (7th Cir. 2008)(quoting *Nichols v. S. Ill. Univ.-Edwardsville*, 510 F.3d 772, 780 (7th Cir. 2007); *see also Haywood v. Lucent Techs., Inc.*, 323 F.3d 524, 532 (7th Cir. 2003)(stating that "[a]t minimum, the employee must be able to show a quantitative or qualitative change in the terms or conditions of employment"). For example, the Seventh Circuit found that a denial of a discretionary bonus does not constitute adverse employment action as a matter of law. *Maclin v. SBC American*, 520 F.3d 781,788 (7th Cir. 2008). The majority of Ware's allegations at best constitute minor slights and even if we accepted each of her allegations as true, such actions would not constitute an adverse employment action against Ware.

Ware's only claim which, if supported by the facts, could conceivably be considered a materially adverse employment action, is her allegation that Defendants conspired to deprive her of branch referrals on the basis of her race. However, at the summary judgment stage, Ware is required to "set forth specific facts showing that there is a genuine issue for trial" and she has put forth absolutely no facts to support such a claim. Fed. R. Civ. P. 56(e); *see also Johnson v. Cambridge Indus., Inc.*, 325

F.3d 892, 901 (7th Cir. 2003)(describing summary judgment as the "put up or shut up" moment in the lawsuit). Ware's only evidence of adverse treatment with respect to branch referrals is her own testimony in which she stated that she "was not sent many branch referrals" and that she "believed that it was possible she was not getting referrals because of her race." (SAF Par. 10). Ware also testified that, to her knowledge, other LaSalle employees were "given" more branches than were given to her during her employment. (SAF Par. 38). Ware also complains that the banks she was eventually "given" were in lower income areas. (SAF Par. 38). However, Ware has not disputed the fact that she was hired by LaSalle specifically to pursue LaSalle's objectives under the Community Reinvestment Act ("CRA"), which meant that it was her job to increase business with customers in lower income areas. (RSF Par. 3). Ware admits that she was specifically hired for that objectI've and that she was hired based on her representations to LaSalle that she had "community contacts." (RSF Par. 3). Even if we construe Ware's testimony that other Business Loan Officers were given more branch referrals in higher income areas as fact, Ware has not established that she was subject to an adverse employment action since she has not shown that these other employees, like her, were hired to perform CRA-related work. (RSF Par. 13). In fact, the evidence presented by Ware indicates that she was the only person hired by LaSalle to work in CRA communities in

commercial lending.  (SAF Par. 4).  There is no evidence in the record that LaSalle had a practice or obligation to specifically provide branch referrals to Business Loan Officers specializing in CRA areas with branch referrals in different localities. Furthermore, Ware admits that when she began to transition from her CRA work into other work, she was assigned to branches by LaSalle and that Branch Managers did work with her to identify prospects starting in 2005.  (SAF Par. 6).  Thus, based on the evidence in the record, no reasonable trier of fact could find that Ware was subject to an adverse employment action based on the number of branch referrals she received.  Therefore, the record reflects that the only adverse employment action taken against Ware upon which she can base a Section 1981 claim is her termination in 2005.

### 2. Prima Facie Case Relating to Ware's Termination

Defendants admit that Ware was subjected to an adverse employment action when her employment was terminated in 2005.  Nonetheless, Defendants argue that Ware cannot establish a prima facie case since she cannot show that she was meeting LaSalle's legitimate employment expectations and she has not pointed to any similarly-situated employees who were treated more favorably.

a. Legitimate Employment Expectations

There is much undisputed evidence in the record indicating that Ware was not meeting LaSalle's employment expectations at the time of her termination. Defendants have offered evidence that in Ware's first year, she met only three out of her five financial goals. (SF Par. 10). In response to Defendants' statement of material facts, Ware has not denied that she failed to meet two of her five financial goals. (RSF Par. 10). Instead, Ware has raised hearsay objections to the evaluation reports cited by Defendants and has disputed the comments that were contained in such reports. (RSF Par. 10). However, we note that these reports could be admissible at trial under certain exceptions to the hearsay rule, including the business records exception contained in Federal Rule of Evidence 803(6). *See Hemsworth v. Quotesmith.Com, Inc.*, 476 F.3d 487, 490 (7th Cir. 2007)(stating that "[t]he evidence relied upon in defending a motion for summary judgment must be competent evidence of a type otherwise admissible at trial"); *see also Stinnett v. Iron Works Gym/Executive Health Spa, Inc.,* 301 F.3d 610, 613 (7th Cir. 2002)(stating that "[i]n granting summary judgment, the court may consider any evidence that would be admissible at trial" and "[t]he evidence need not be admissible in form . . . but it must be admissible in content"). Furthermore, as indicated below, Defendants rely on other admissible evidence to support their contention that Ware failed to meet these

goals and Ware has not presented evidence that contradicts such evidence. (SF Par. 10); (RSF Par. 10). Therefore, the fact that Ware failed to meet two of her five financial goals in her first year is deemed to be undisputed pursuant to Local Rule 56.1. (RSF Par. 18); *see Martino*, 2008 WL 2157170, at *1 (stating that a "Court may disregard statements and responses that do not properly cite to the record"); *Dent*, 2003 WL 22025008, at *1 n.1 (indicating that a denial is improper if the denial is not accompanied by specific references to admissible evidence or portions of the record representing admissible evidence).

Defendants have also presented evidence that in 2004, Ware failed to meet three of her five financial goals including "loan portfolio growth, new business and calling activities." (SF Par. 15). Defendants point out that Ware's cumulative score on her 2004 review was 2.55, which was below LaSalle's expectations. (SF Par. 18). Defendants point to evidence that, as a consequence, Ware was put on "Initial Warning" status and given specific quantifiable objectives that she would be required to meet. (SF Par. 18-19). Ware has once again not pointed to evidence disputing the fact that she received such a rating and was put on "Initial Warning" status and has not identified a proper evidentiary objection to such evidence. (RSF Par. 15, 18-19); *see Martino*, 2008 WL 2157170, at *1; *Dent*, 03 WL 22025008, at *1 n.1. Ware does point out, as Defendants concede, that she appealed her cumulative score to the

human resources who adjusted the score from 2.55 to 3. (RSF Par. 15); (SF Par. 18). However, Ware has not pointed to any evidence indicating that she was formally taken off of her "Initial Warning" status. (RSF Par. 19). Ware further admits that later she received a "FINAL written warning for performance as of April 13, 2005," based on a failure to meet the expectations set forth after the Initial Warning. (RSF Par. 23).

Defendants have offered evidence that while Ware was employed on a "Final Warning" status she engaged in two terminable offenses. First, Defendants assert that Ware unilaterally represented to a client that the bank would alter the interest rate and terms of a loan without first obtaining approval from a supervisor. (SF Par. 27). Documentary evidence reflects that Ware did not obtain prior approval of a supervisor relating to the above loan and only after the fact requested approval by sending an email to the supervisor. Despite this fact, Ware testified that she did obtain approval before she signed the agreement. (RSF Par. 27). Since there is conflicting evidence with respect to this incident and the court has a duty to construe all facts in a light most favorable to the non-moving party, the court will not consider this incident as evidence that Ware was not meeting Defendants' legitimate employment expectations. *Anderson*, 477 U.S. at 248; *Insolia*, 216 F.3d at 599; *see also Paz*, 464 F.3d 659, 664 (7th Cir. 2006)(indicating that self-serving deposition

testimony can be sufficient to raise a genuine issue of material fact).

Defendants have also offered evidence that Ware engaged in a separate terminable offense while employed on "Final Warning" status and that it was this second offense, for which she was ultimately terminated.  (SF Par. 34-39). According to the undisputed evidence, Ware was working with a prospective customer to convince that customer to move a $1 million loan to LaSalle.  (RSF Par 35).  Defendants point to evidence that Ware's manager, Kress, sent Ware an email on June 28, 2008, stating in part "until we have a signed commitment letter NOTHING happens."  (SF Par. 36)(emphasis in original).  Ware does not dispute the contents of this email and merely objects to the email on the basis of hearsay.  (RSF Par. 36).  However, such information is not hearsay and could be admissible at trial for something other than the truth of the matter asserted, such as to show the impression that it left on Ware.  Defendants point to evidence that, despite Kress' email, Ware sent an unauthorized communication to the bank of the prospective customer requesting a payoff letter.  (SF Par. 37-38).  Specifically, Defendants' evidence suggests the customer reported to Kress that their bank had received the request on Ware's personal letterhead.  (SF Par. 37).  Ware has not offered evidence to indicate that she did not send the unauthorized letter.  Ware merely testified that "she did not recall ever requesting the payoff letter" and admitted that it was

"possible" that the letter contained her handwriting. (SAF Par. 22-23). As we indicated above, "evasive denials that do not fairly meet the substance of the material facts" are improper and deemed admitted pursuant to Local Rule 56.1. *See Martino*, 2008 WL 2157170, at *1; *see also Jankovich v. Exelon Corp.,* 2003 WL 260714, at *5 (N.D. Ill. 2003)(stating a denial of a statement of fact that is evasive and does not directly oppose the assertion is improper and thus the contested fact is deemed admitted pursuant to Local Rule 56.1).

Ware further asserts that even if she did send the unauthorized letter, that she did not properly understand Kress' email. (SAF Par. 20). Such an argument does not refute the fact that by sending the unauthorized letter, Ware was not meeting LaSalle's legitimate employment expectations. Ware has not denied the fact that the prospective customer "was furious about Ware's unauthorized communication . . . refused to do business with LaSalle, [and] also threatened to sue LaSalle for Ware's conduct." (RSF Par. 39). Thus, based on the overwhelming undisputed evidence in the record, no reasonable trier of fact could conclude that Ware was meeting LaSalle's legitimate employment expectations at the time of her termination.

b. Similarly-Situated Employees

Defendants also argue that Ware cannot establish a prima facie case since she

has not adequately pointed to similarly-situated white employees who were treated more favorably than Ware. In Ware's brief opposing summary judgment, she argues that she is not required to identify similarly-situated employees under the prima facie analysis. (Ans. 4). However, Ware incorrectly relies on legal precedent relating to retail discrimination, for her assertion that she need not point to similarly-situated employees. (Ans. 4). Under the prima facie burden in Section 1981 cases related to employment discrimination, the plaintiff does have an obligation to show that "the employer treated similarly situated employees not in the protected class more favorably." *Scaife*, 446 F.3d at 739-40; *see also Herron*, 388 F.3d at 299)(stating that Section 1981 claims are analyzed "under the same rubric as Title VII claims"). In order to satisfy the similarly-situated element of the *prima facie* case, a plaintiff "must demonstrate that there is someone directly comparable in all material respects." *Barricks v. Eli Lilly and Co.*, 481 F.3d 556, 559-60 (7th Cir. 2007)(stating that "[t]he 'similarly situated' test is a flexible, commonsense inquiry whose requirements vary from case to case" and that "[i]ts purpose is to determine whether there are enough common factors between a plaintiff and a comparator-and few enough confounding ones-to allow for a meaningful comparison in order to divine whether discrimination was at play"). Several factors must be considered when determining similarity, including whether the employees dealt with the same

supervisor, whether the employees had comparable qualifications and experience, and whether the employees "engaged in similar conduct without such differentiating or mitigating circumstances as would distinguish their conduct or the employer's treatment of them." *Radue*, 219 F.3d at 617-618.

Defendants have pointed to undisputed evidence that the reason Ware was terminated was because she requested a payoff letter after receiving express instructions not to request such a letter. (SF Par. 34-41). Ware did testify that she was told that two other BBOs at LaSalle also disregarded instructions and requested payoff letters without being terminated. (RSF Par. 49). We recognize that self-serving testimony by a plaintiff can at times create genuine disputes as to material facts, if, for example, such testimony relates to what the plaintiff saw or heard or based upon the plaintiff's personal knowledge. *Paz*, 464 F.3d at 664-65. However, self-serving beliefs by a plaintiff cannot create genuine disputes where the beliefs are not premised on a personal knowledge or any legitimate basis. *See Williams v. Seniff*, 342 F.3d 774, 785 (7th Cir. 2003)(stating that "[a]lthough a nonmoving party's own deposition may constitute affirmative evidence to defeat summary judgment, conclusory statements in the deposition do not create an issue of fact"); *Payne v. Pauley*, 337 F.3d 767, 772 (7th Cir. 2003)(indicating that self-serving statements must be based on personal knowledge and "although personal knowledge

may include reasonable inferences, those inferences must be 'grounded in observation or other first-hand personal experience' and '[t]hey must not be flights of fancy, speculations, hunches, intuitions, or rumors about matters remote from that experience'")(quoting in part *Visser v. Packer Eng'g Assoc.*, 924 F.2d 655, 659 (7th Cir. 1991)).  Ware has not sufficiently demonstrated that she has personal knowledge that both of these BBOs were also instructed not to request payoff letters and did so without getting fired.  She admitted that she was not physically present during these conversations and was told about them after the fact.  (Ware Dep. 217).  Finally, even if Ware could present evidence that two other employees also sent unauthorized payoff letters, Ware has not presented any evidence that these employees had similar track records at LaSalle.  For example, Ware has not offered evidence that either of these other BBOs were on "Final Notice" status at the time that they took the alleged actions.  Thus, based on the evidence in the record, no reasonable trier of fact could conclude that there were other similarly-situated white employees who were treated more favorably than Ware.  Since, as a matter of law, Ware has failed to satisfy the legitimate employment expectations prong and the similarly-situated employees prong of her prima facie burden, her Section 1981 claim relating to her termination fails.

## B. Legitimate Non-Discriminatory Reason and Pretext

Defendants argue that even if Ware could establish a prima facie case of discrimination, they would still be entitled to summary judgment on Ware's Section 1981 claims since they have pointed to a legitimate and non-discriminatory reason for Ware's termination and Ware has not shown that such a reason was a pretext for unlawful discrimination. As discussed above, there is ample evidence in the record to indicate that Ware was terminated on the basis of both performance deficiencies throughout her employment at LaSalle and on the basis of her insubordination in sending an unauthorized payoff letter after being specifically instructed to take no action. Thus, Defendants have put forth a legitimate and non-discriminatory reason for Ware's termination and the burden, thus, shifts back to Ware to establish pretext for unlawful discrimination.

Ware has failed to offer any evidence that Defendants' stated reason for Ware's termination was a pretext for unlawful discrimination in violation of Section 1981. Even if, despite the overwhelming undisputed evidence to the contrary, Ware could raise a genuine issue of fact with respect to whether she actually sent the unauthorized payoff letter, Ware has not shown that Defendants did not have a reasonable basis to believe that Ware had done so. Ware does not dispute the prospective customer informed Kress that Ware had sent the payoff letter and that

customer was furious with LaSalle, refused to do business with LaSalle, and threatened to sue LaSalle based on Ware's conduct. (RSF Par. 37, 39). Ware has not pointed to any evidence that would indicate that Kress somehow knew that Ware had not sent the letter. Ware admits, that Kress immediately called Ware to obtain her side of the story, but that Ware did not return his calls, did not appear to work the next day, and took a vacation. (RSF 40-41). Thus, even if Ware could somehow show that she was meeting all of LaSalle's business expectations and that she did not commit any of the offenses alleged, she has not pointed to anything to contradict the fact that Kress believed that Ware had sent the unauthorized communication despite his clear instructions not to do so.

Finally, while Ware alleged in her deposition that her former manager, Carlson, exhibited dislike towards her, treated her in an unfair fashion, and made inappropriate comments, (SAF Par. 25), Ware has made no such allegations with regard to Kress. In fact, Ware does not dispute the fact that she accepted a transfer from Carlson to Kress after she levied complaints about Carlson to human resources. (RSF Par. 31). It is undisputed that Kress, was the person who, after consulting a human resources officer, made the decision to terminate Ware. (RSF Par. 40). Ware has not pointed to any evidence that such a decision was motivated by race or that the stated reason for the termination of Ware's employment was a pretext for

unlawful discrimination.  Therefore, we grant Defendants' motion for summary judgment in its entirety.


## CONCLUSION

Based on the foregoing analysis, we grant Defendants' motion for summary judgment in its entirety.


Samuel Der-Yeghiayan
United States District Court Judge


Dated:   November 25, 2008